# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENATO OPENIANO,<br><br>                               Plaintiff,<br>v.<br><br>HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, a corporation, formerly known as ITT HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, a corporation; ITT HARTFORD LIFE AND ANNUITY INSURNACE COMPANY, a corporation and DOES 1-100, inclusive,<br><br>                              Defendants. | Case No.: 18-CV-0943-AJB-AGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(Doc. No. 24)** |

      Before the Court is Defendants' motion for judgment on the pleadings. (Doc. No. 24.) Plaintiff filed an opposition, (Doc. No. 27), and Defendants filed a reply, (Doc. No. 30). For reasons set forth herein, the Defendants' motion for judgment on the pleadings is **GRANTED**.

/ / /

# FACTUAL AND PROCEDURAL BACKGROUND

Renato Openiano ("Plaintiff") brings this suit against his insurers, Hartford Life and Annuity Insurance Company and ITT Hartford Life and Annuity Insurance Company ("Defendants"). In Plaintiff's Complaint, Plaintiff alleges seven causes of action against Defendants: (1) breach of contract; (2) breach of fiduciary duty; (3) violations of Unfair Claim Settlement Practice Act under Cal. Ins. Code 790.03, *et seq.*; (4) insurance bad faith; (5) unfair competition under Bus. & Prof. Code 7200, *et seq.*; (6) constructive fraud; and (7) fraud. (*See generally* Doc. No. 1-2.)[1] Plaintiff first filed his complaint in California Superior Court, but Defendants removed the case to federal court. (Doc. No. 1.) After removing the case to federal court, Defendants filed their Answer and then filed this Motion for Judgment on the Pleadings. (Doc. No. 4; Doc. No. 24-1.)

Plaintiff's Complaint spans sixty-three pages, excluding exhibits, but the facts of the case can be summarized succinctly as follows. The claims arise from two separate incidents: the first occurred in February 1998 and the second occurred in February 2015.

A. February 1998 Incident

On or about February 1997, Plaintiff signed up for and was issued Universal Life Insurance from Defendants (the "Policy"). (Doc. No. 1-2, Ex. A ¶ 12.) The Policy contained a $110,000 Renewable and Convertible Term Life Insurance Rider and Planned Premium Benefit in addition to a twenty-four (24) month Disability Income Supplement Rider. (*Id.* ¶¶ 13–14.) The Disability Income Supplement Rider provided for $1,450 per month for 24 months for a covered disability. (*Id.*). In addition, the Policy included policy loan benefits which entitled the insured to a policy loan. (*Id.*).

In September 1997, Plaintiff became disabled and consequently made a claim for

---

[1] The Court notes that the Complaint does not begin until the eleventh page of Exhibit A, (Doc. No. 1-2), of Defendants' Notice of Removal.

disability benefits under the Policy in the amount of $1,450 per month. (*Id.* ¶ 19.) Defendants paid the first six months in two lumpsum payments of $4,350. (*Id.* ¶ 20.) The first lumpsum check, for the period of September 8, 1997 through December 8, 1997, never arrived. (*Id.* ¶ 22.) Two months later, on February 15, 1998, Plaintiff received a letter that was supposed to contain the check; however, the check was absent. (*Id.* ¶ 23.) Plaintiff and his wife immediately noticed the missing check and contacted Defendants for a replacement check. (*Id.*) A check was mailed out to Plaintiff on or about March 12, 1998, in the amount of $4,727.43. (*Id.* ¶ 25). The amount was $377.43 more than the disability payment expected. (*Id.*).

Plaintiff and his wife did not review the accompanying letter regarding the payment amounts provided for in the check. (*Id.* ¶ 26.) The letter that accompanied this check, which Plaintiff attached to his Complaint as Exhibit B, plainly stated that it "represents $4,350.00 for the three month disability period from December 8, 1997 to March 8, 1998 and $377.43 for the waiver of the planned premium benefit for the premiums due January 10, 1998 through March 10, 1998." (*Id.*, Ex. B.) It was not until sometime in the Summer of 2015 that Plaintiff realized that the payment received around March 12, 1998, was actually the payment for the next installment of the disability income in addition to a premium reimbursement under the Waiver for Planned Premium Benefit—not the replacement of the first lumpsum covering September 1997 through December 1997. (*See id.* ¶ 28.) Thus, Plaintiff never received his lumpsum disability payment covering the three month disability period of September 1997 through December 1997. (*Id.*)

B.  February 2015 Incident

Sometime in February 2015, Plaintiff obtained a policy loan from Defendants in the amount of $2,242. (*Id.* ¶ 30.) The loan check was dated February 13, 2015. (*Id.*) Plaintiff was alerted that the policy loan check bounced on February 26, 2015, causing a $20 bounced check fee in addition to the absent loan amount. (*Id.* ¶ 119.) A March 11, 2015

3

letter explained that two checks had accidently been sent to Plaintiff and that one of the checks incurred a stop order to remedy two checks being sent to Plaintiff. (Doc. No. 4, Ex. C at 15.) However, Plaintiff contends that he only received one check in February 2015, and when he attempted to deposit the check it had been stopped. (Doc. No. 4, Ex. A ¶¶ 30, 55.) Plaintiff did not receive the $2,242 loan amount until June 8, 2015. (*Id.*) The replacement check did not include the $20 bounced check fee incurred by Plaintiff. (*See id.* ¶ 119.)

Because the Plaintiff was aggravated by the bounced check "ordeal," Plaintiff began to scrutinize all documents and communications between Plaintiff and Defendant dating back to the beginning of their contractual relationship. (*Id.* ¶ 45.) A few months after the February 2015 incident, Plaintiff discovered the $4,727.43 check was not actually a replacement check and that he never received the $4,350 owed for the period of September 1997 through December 1997. (*Id.* ¶ 46.)

## **LEGAL STANDARD**

Fed. R. Civ. P. 12(c) provides, in relevant part, that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." As courts of this Circuit have recognized, Fed. R. Civ. P. 12(h)(2) "specifically authorizes" a moving party to use a motion for judgment on the pleadings "to raise the defense of failure to state a claim, even after an answer has been filed." *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (affirming dismissal of action pursuant to Rule 12(c)). In deciding a Rule 12(c) motion, courts apply the same standard of reviews as with a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Martorello v. Sun Life Assur. Co. of Canada*, 2009 WL 1227011, at *3–4 (N.D. Cal. May 1, 2009) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)). Rule 12(b)(6) tests the legal sufficiency of the pleadings, and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Novarro v. Block*, 250 F.3d 729, 732 (9th

Cir. 2001). As a result, a "[j]udgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *See General Conference Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citing Fed. R. Civ. P. 12(c)).

**DISCUSSION**

Defendants seek a motion for judgment on the pleadings on the basis that the relevant statute of limitations bar all of Plaintiff's claims.

A.  Requests for Judicial Notice

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants request judicial notice of the following seven exhibits: (A) the Unclaimed Property section of the California State Controller's website concerning Plaintiff; (B) Plaintiff's complaint filed on June 8, 2010 in *Tibro Reality and Renato Openiano v. First Am. Title Co., et al.*, Case No. 37-2010-00093820-CU-BC-CTL; (C) California Court of Appeals' decision in *Openiano v. First Am. Title Co.*, No. D061414, 2013 WL 5372878 (Cal. Ct. App. Sept. 26, 2013); (D) Plaintiff's complaint filed on September 14, 2010 in *Aguinaldo Realty et al. v. Bank of Am.*, No. 37-2010-00100232-CU-BT-CTL; (E) California Court of Appeals' decision in *Openiano v. Bank of Am. Corp.*, No. D060901, 2012 WL 6721005 (Cal. Ct. App. Dec. 28, 2012); (F) California Court of Appeals' decision in *Openiano v. Hammer*, No. D062157, 2014 WL 1217970 (Cal. Ct. App. Mar. 25, 2014); and (G) a copy of the San Diego Superior Court docket website reflecting all of the actions filed by Plaintiff in the San Diego Superior Court. (*See* Doc. No. 24-2.) As to Exhibit A, Courts may take judicial notice of websites run by governmental agencies. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir.

2010); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 8, 2008). As to Exhibits B through G, the Court may take judicial notice of filings in other courts. *See Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 689 (9th Cir. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, the Court may not take judicial notice of findings of facts from another case. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. Sept. 12, 2006). Accordingly, the Court **GRANTS** Defendants' request for judicial notice.

Plaintiff requests judicial notice of his complaint in this case. (Doc. No. 27 at 24.) The Court need not take judicial notice of its own docket or documents filed on the docket in this case. *Henricks v. California Pub. Utilities Comm'n*, No. 17CV2177-MMA-MDD, 2018 WL 2287346, at *8 (S.D. Cal. May 18, 2018) (citing *Asdar Grp. v. Pillsbury, Maddison, & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996)). Accordingly, the Court **DENIES** as moot Plaintiff's request for judicial notice.

### B. Statute of Limitations for Plaintiff's Causes of Action

The main crux of Defendants' motion is based on the relevant statute of limitations barring Plaintiff's claim. California law mandates that a civil action must be commenced within the relevant period after the cause of action accrues. Cal. Code Civ. Proc. § 312. However, the limitations period only begins to run when a cause of action accrues. *See id.* The purpose of a statute of limitations is to prevent a defendant from "defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps," as well as to incentivize a plaintiff to diligently pursue their claim. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (citations omitted).

Plaintiff asserts seven causes of actions: (1) breach of contract; (2) breach of

fiduciary duty;[2] (3) violations of the Unfair Settlement Practice Act;[3] (4) bad faith; (5) unfair competition under Business and Professional Code §§ 17200 *et seq.*; (6) constructive fraud; and (7) fraud. The Court will establish the dates in which all of Plaintiff's causes of actions accrued based on his receipt of the check and letter in February 1998. However, Plaintiff argues that he is entitled to tolling of his claims on the basis of the delayed discovery rule, which the Court will discuss in further detail below.

Breach of contract is a state claim governed by California Code of Civil Procedure §337(1). Under Cal. Civ. Proc. Code § 337(1), the statute of limitations for a breach of contract claim is four years from the date of accrual. Thus, Plaintiff's last day to bring a cause of action for breach of contract was in February 2002.

Breach of fiduciary duty has a statute of limitations of three years. *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (2000). Accordingly, the last day for Plaintiff to bring this claim was February 2001.

The statute of limitations that governs Plaintiff's fourth cause of action, bad faith, is California Code of Civil Procedure § 339(1). Under Cal. Civ. Proc. Code § 339(1), the statute of limitations expires two years after the cause of action accrues. Thus, Plaintiff's last day to bring a cause of action for bad faith was in February 2000.

The statute of limitations that governs Plaintiff's fifth cause of action, unfair competition, is California Business and Professional Code § 17208. Under Cal. Bus. & Prof. Code §17208, the statute of limitations for unfair competition expires four years from the time the cause of action accrues. Thus, Plaintiff's last day to bring a cause of action for unfair competition was in February 2002.

---

[2] As discussed in further detail herein, Plaintiff cannot establish breach of fiduciary duty under California law.

[3] As explained in further detail below, there exists no private right of action for violations under the Unfair Settlement Practice Act. *See Moradi-Shalal v. Fireman's Fund. Ins. Co.*, 46 Cal. 3d 287, 313 (1988).

The statute of limitations that governs Plaintiff's sixth and seventh causes of action, constructive fraud and fraud, are found in California Code of Civil Procedure § 338(d). Under Cal. Civ. Proc. Code § 338(d), the statute of limitations expires three years from the time the fraud, or constructive fraud, would have been discovered. Thus, Plaintiff's last day to bring a cause of action for either constructive fraud or fraud would have been in February 2001.

C.  Delayed Discovery Rule

Plaintiff asserts that the statute of limitations did not begin to run in February 1998 on any of his claims due to California's delayed discovery rule. Defendant asserts that Plaintiff may not rely upon the delayed discovery rule or incapacity to toll the relevant statute of limitations for Plaintiff's claims. (*See generally* Doc. No. 24-1.) Plaintiff concedes in his response that he is not seeking to rely on legal incapacity for tolling purposes. (Doc. No. 27 at 15.) Accordingly, the Court will only address California's delayed discovery rule.

In order to utilize California's delayed discovery rule, "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts that show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (citations omitted). The delayed discovery rule is usually applied in tort actions, but can also extend to "certain type of breach of contract actions, such as those involving fraud or misrepresentation by the defendant." *NBCUniversal Media, LLC v. Sup. Ct.*, 225 Cal. App. 4th 1222, 1233 (2014) (citations omitted).

For the delayed discovery rule to apply, a potential plaintiff who suspects that an injury has occurred must conduct a "reasonable investigation of all potential causes of that injury. *If such investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action . . . .*" *Fox*, 35 Cal. 4th at 803

1  (emphasis added); *see also Ward v. Allstate Ins. Co.*, 964 F. Supp. 307, 311 (C.D. Cal.
2  1997). As Plaintiff contends in his complaint, he was wronged by Defendant in 1998.
3  Specifically, in February 1998, Plaintiff and his wife noticed that they were deprived of
4  Plaintiff's disability check. (Doc. No. 1-2, Ex. A ¶ 22.) Plaintiff immediately alerted
5  Defendants of the missing check and in March 1998, Plaintiff received a check in the
6  amount of $4,727.43, $377.43 more than the amount necessary from the missing check.
7  (*Id.* ¶ 25.) Plaintiff admitted that in the excitement of receiving the check, he "did not
8  scrutinize the accompanying letter as to whether it really was the replacement." (*Id.* ¶ 26.)
9  Plaintiff did not realize until Summer 2015 that the check in fact was not a replacement.
10 (*Id.* ¶ 27; *see also* Doc. No. 1-2, Ex. B at 2.)

11 While Plaintiff may claim he did not discover he had a cause of action against
12 Defendants until Summer 2015, such discovery of facts was not because of Defendants'
13 deceit, but rather because Plaintiff did not act with reasonable diligence.

14 Plaintiff admits in his complaint he had the facts to constitute the cause of action,
15 but did not diligently investigate the facts. Plaintiff knew he was missing a check and did
16 not read the letter accompanying the next check he received. Thus, Plaintiff's claim began
17 to accrue in February 1998. *See NBCUniversal Media, LLC,* 225 Cal. App. 4th at 1234
18 (granting summary judgment in favor of defendant because plaintiff did not plead the
19 inability to have discovered their claims earlier despite reasonable diligence); *see also*
20 *Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal. App. 4th 396 (2011). As
21 Plaintiff puts it, he did not read the accompanying letter with the $4,727.43 check because
22 Plaintiff trusted Defendants. (Doc. No. 1-2, Ex. A ¶ 27.) Even if Plaintiff is found to not
23 have actual notice that the $4,727.43 check was not for the prior missing check for February
24 1998, Plaintiff had at a minimum inquiry notice. *See Prudential Home Mortgage Co. v.*
25 *Superior Court*, 66 Cal. App. 4th 1236, 1247 (1997) (the plaintiff "must show 'that [he]
26 was not at fault for failing to discover [facts sufficient for a cause of action] or had no

9

actual or presumptive knowledge of facts sufficient to put him on inquiry.'") (citations omitted).

For the foregoing reasons, Plaintiff has failed to properly plead all seven causes of action relating to his February 1998 incident as he cannot establish, based on his complaint, that California's delayed discovery rule applies and the statute of limitations has, therefore, run on his claims.

### D. Plaintiff's February 2015 Claim

In 2015, Defendant issued duplicative loan checks in the amount of $2,242. Defendant issued a stop payment on the check that Plaintiff tried to deposit. The check bounced and Plaintiff incurred a $20.00 fee that he did not pay. (Doc. No. 1-2, Ex. A ¶ 56.) He then received the loan check for $2,242 four months later. (*Id.* ¶ 55.) Plaintiff fails to plead fraud, breach of contract, or bad faith. It does not amount to fraud that Defendants issued a stop payment on duplicative checks. Further, Plaintiff has not plead a breach of contract since Defendants sent another check in the amount of $2,242 four months later. To state a claim for bad faith, Plaintiff must allege that benefits were withheld or unreasonably delayed. *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (Ct. App. 1990). The issuance of a check four months later is not an unreasonable delay. Thus, Plaintiff has failed to plead any claim arising out of the February 2015 incident.

### E. Plaintiff's Unfair Claims Settlement Act and Breach of Fiduciary Duty Claims

In addition to the statute of limitations barring Plaintiff's claims, Plaintiff's claims for Unfair Claims Settlement Act and breach of fiduciary duty claims are legally insufficient. Plaintiff alleges that Defendants violated the Unfair Claims Settlement Act. (*See generally* Doc. No. 1-2.) However, the California Supreme Court has held that the Insurance Code Section 790.03 does not create any private cause of action in favor of the insured or third-party claimants. *See Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 304 (1988). Therefore, Plaintiff may not bring this cause of action against

Defendants.

Plaintiff claims that Defendants breached a fiduciary duty. (*See generally* Doc. No. 1-2.) However, while the insurer-insured relationship contains many elements of a fiduciary relationship, "'the [California] courts which have directly addressed the issue ... have specifically held that there is no fiduciary duty between an insurer and an insured.'" *General American Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1126 (N.D. Cal. 1991) (quoting *Hassard, Bonnington, Roger & Huber v. Home Ins. Co.*, 740 F. Supp. 789, 792 (S.D. Cal. 1990)). Thus, as no fiduciary duty exits, Plaintiff cannot plead a breach of fiduciary duty. These two claims are legally insufficient. Accordingly, these two claims are dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for judgment on the pleadings in its entirety. Leave to amend is to be given freely. Fed. R. Civ. P. 15(a)(2). However, it is properly denied when amendment would be futile. *See Carrico v. City & Cnty. Of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2001). Here, the Court finds that amendment would be futile. Accordingly, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: September 17, 2019

Hon. Anthony J. Battaglia
United States District Judge

11

18-CV-0943-AJB-AGS